IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

**FILED**

2008 FEB 12 ⊃ 3: 53

U.S. DISTRICT COURT
EASTERN DIST. TENN.

BY_____DEPT. CLERK

| | | |
|---|---|---|
| UNIVERSITY OF TENNESSEE, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:08-CV- 43 |
| | ) | Phillips/Shirley |
| ACTION SPORTS MEDIA, INC., | ) | |
| UNIFIED ARMIES OF AMERICA, | ) | |
| INC., GORDON WHITENER, | ) | |
| JERRY FELIX, and DAVID | ) | |
| JAMISON, collectively d/b/a "BIG | ) | |
| ORANGE ARMY," | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff, The University of Tennessee ("University" or "Plaintiff") states the

following for its Complaint against Action Sports Media, Inc., Unified Armies of

America, Inc., Gordon Whitener, Jerry Felix, and David Jamison, collectively

doing business as "Big Orange Army" ("Defendants").

## SUBSTANCE OF THE ACTION

1.     This is an action for trademark infringement and unfair competition

arising under the Federal Trademark Act of 1946, 15 U.S.C. § 1051 et seq.

("Lanham Act"); the Tennessee Trade Mark Act of 2000, Tenn. Code Ann. § 47-

25-512; the anti-dilution laws of the State of Tennessee, Tenn. Code Ann. § 47-25-513; and the common law.

2.     Defendants are using the University's well known trademarks in connection with the sale of goods, are improperly authorizing third parties to use the University's well-known trademarks in connection with the sale of goods or services, and are making false and misleading statements in the advertising and promotion of their "Big Orange Army" business. Defendants' activities are causing and are likely to continue to cause confusion and deception of consumers and the public absent relief from this Court.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction under section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338. This Court has jurisdiction over the University's related state and common law claims pursuant to 28 U.S.C. §§ 1338 and 1367.

4.     This Court has personal jurisdiction over Defendants because, on information and belief, Defendants reside in and conduct business in this State, have committed tortious acts in this State, and otherwise have established contacts within this State making the exercise of personal jurisdiction proper.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2)

because a substantial part of the events or omissions giving rise to the action occurred in this District.

## **THE PARTIES**

6.    Plaintiff University of Tennessee is an instrumentality of the State of Tennessee, having its principal offices in Knoxville, Tennessee.

7.    Defendant Action Sports Media, Inc. ("ASM") is a corporation existing under the laws of the State of Washington, with an office and principal place of business at 3401 Russ Circle, Suite E, Alcoa, Tennessee 37701. Its registered agent for service of process is CT Corporation System, 800 S. Gay Street, Suite 2021, Knoxville, Tennessee 37929. ASM is the successor-in-interest to The Big Orange Army, Inc., which is no longer an existing corporation in the State of Tennessee.

8.    Defendant Unified Armies of America, Inc. is a corporation existing under the laws of the State of Tennessee with an office and principal place of business at 3401 Russ Circle, Suite E, Alcoa, Tennessee 37701. Its registered agent for service of process is Jerry Felix at 3401 Russ Circle, Suite E, Alcoa, Tennessee 37701.

9.    Defendant Gordon Whitener is Chairman and Chief Executive Officer of ASM and resides at 3543 Captains Way, Knoxville, Tennessee 37922.

3

Defendant Whitener directs, controls, ratifies, participates in, and is one of the moving forces behind the infringing activity alleged in this Complaint.

10.     Defendant Jerry Felix is Chief Financial Officer of ASM and resides at 1320 Watersong Lane, Knoxville, Tennessee 37922. Defendant Felix directs, controls, ratifies, participates in, and is one of the moving forces behind the infringing activity alleged in this Complaint.

11.     Defendant David Jamison resides in this District. Defendant Jamison (who refers to himself as "General" Jamison, and is the self-professed "leader" of the Big Orange Army) directs, controls, ratifies, participates in, and is one of the moving forces behind the infringing activity alleged in this Complaint.

12.     Defendants collectively do business under the name "The Big Orange Army."

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### A.     The University of Tennessee and Its Trademark Rights

13.     The University of Tennessee is a statewide institution governed by a 26-member Board of Trustees consisting of ex officio members and members appointed by the governor of Tennessee. The University was founded in 1794 in Knoxville as Blount College, became East Tennessee College in 1807, East Tennessee University in 1840, and the University of Tennessee in 1879.

14. The University has several campuses including its flagship campus in Knoxville ("UTK").

15. Over the past three years, seven University faculty members have received National Endowment for the Humanities fellowships, making the University of Tennessee one of only nine universities in the nation so honored. In its 2008 America's Best Colleges ranking, U.S. News and World Report placed UTK in the top 30 percent of national public universities, ranked 45th among 164 public institutions. UTK also is in the top 40 percent of all national universities, ranked 96th among 262 colleges and universities around the country.

16. In the 2006-2007 academic year, UTK had 21,126 undergraduates and 5,670 graduate students. Moreover, UTK has students from all 50 states in the U.S. and more than 100 different countries. The University has nearly 300,000 living alumni.

17. UTK fields one of the most prestigious Division I athletics programs in the country. UTK is a member of the 12-school Southeastern Conference ("SEC"), and has 20 varsity sports programs. The overall athletics program ranked 8th in the country in the Sports Academy Director's Cup standings in 2007. Also in 2007, 19 of 20 varsity programs participated in NCAA post-season competition, including bowl games and other championship competitions. UTK is

the only athletic program to ever have its football, men's basketball, and women's basketball programs ranked in the top five in national attendance in the same season. The Lady Vols basketball program claimed its 7th national championship, the football team won the SEC Eastern Division and Outback Bowl Championships, and the men's basketball team advanced to the NCAA "Sweet Sixteen" during the 2006-07 academic year. UTK has had significant nationwide exposure due to the frequent coverage of its men's football and basketball and women's basketball games on national television networks. In 2006-07, UTK ranked 9th among all schools represented by the Collegiate Licensing Company ("CLC") in the sale of officially licensed collegiate products, mostly related to athletic program activities. Licensed product sales generated $3,133,722 in royalties for the University, most of which is used for general student scholarships.

18. The University has extensively used and promoted "UNIVERSITY OF TENNESSEE" as its name, as well as a trademark and service mark. The University developed trademark rights in the UNIVERSITY OF TENNESSEE mark long before the activities at issue in this Complaint, and the UNIVERSITY OF TENNESSEE name and mark serves as a powerful indicator of the source of the goods and services provided by, licensed by, or otherwise affiliated with the University.

19. The University is the owner of U.S. Trademark Registration No. 1,334,260 for its UNIVERSITY OF TENNESSEE mark for "writing pads, note pads, notebook paper, and window and bumper stickers," "ceramic mugs, plastic cups, pewter cups and goblets," "jackets, T-shirts, and caps." Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable. A true and correct copy of the Certificate of Registration for the UNIVERSITY OF TENNESSEE mark is attached as **Exhibit 1.**

20. The University also owns U.S. Trademark Registration No. 1,348,880 for its THE UNIVERSITY OF TENNESSEE & Design mark depicted below for "key chains," "notebook paper, ring binders, and window stickers," "shot glasses and plastic pitchers," "knit shirts, sweat shirts, T-shirts, and v-neck shirts."



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15

U.S.C. §§ 1058 and 1065, and this registration is incontestable. A true and correct copy of the Certificate of Registration for the THE UNIVERSITY OF TENNESSEE & Design mark is attached as **Exhibit 2**.

21.    The University is also the owner of State of Tennessee registrations for the marks UNIVERSITY OF TENNESSEE, KNOXVILLE and THE UNIVERSITY OF TENNESSEE. True and correct copies of these State of Tennessee registrations are attached collectively as **Exhibit 3.**

22.    The University has extensively used and promoted "TENNESSEE" as its name, as well as a trademark and service mark. The University developed trademark rights in the TENNESSEE mark long before the activities at issue in this Complaint, and the TENNESSEE name and mark serves as a powerful indicator of the source of the goods and services provided by, licensed by, or otherwise affiliated with the University.

23.    The University is the owner of U.S. Trademark Registration No. 1,368,639 for its TENNESSEE mark for "key chains," "pens containing watches, and window and paper stickers," "stadium cushions," "drinking glasses, ceramic mugs, and goblets," "sweat shirts, sweat pants, caps, jackets, knit shirts, T-shirts, v-neck shirts, and shorts" "stuffed toys." Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this

registration is incontestable. A true and correct copy of the Certificate of Registration for the TENNESSEE mark is attached as **Exhibit 4.**

24. The University has extensively used and promoted the stylized T mark depicted below as a trademark and service mark (the "Power T Mark").



The University developed rights in the Power T Mark long before the activities at issue in this Complaint, and the Power T Mark serves as a powerful indicator of the source of the goods and services provided by, licensed by, or otherwise affiliated with the University.

25. The University is the owner of U.S. Trademark Registration No. 2,445,722 for its Power T Mark for "watches, earrings, necklaces, and pins," "posters, prints, envelopes, stationary, programs, stickers, decals, magnets, and sporting event schedules," "key chains, plastic license plates and flags," "drinking cups, mugs, glasses, and lamps," "polo shirts, short-sleeve and long-sleeve T-shirts, sweatshirts, shorts, pants, shoes, hats, jackets, coats, vests, gloves, socks, sweaters and long-sleeve and short-sleeve shirts," "carrying bags, dolls, footballs,

basketballs, golf balls, helmets, stuffed animals, miniaturized toy figures, and games," "entertainment services in the nature of intercollegiate sports exhibitions." Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable. A true and correct copy of the Certificate of Registration for the Power T Mark is attached as **Exhibit 5.**

26.    The University is also the owner of State of Tennessee registrations for the Power T Mark. True and correct copies of these State of Tennessee registrations are attached collectively as **Exhibit 6.**

27.    The Power T Mark has been used in connection with the University's athletic goods and services for decades and is featured on the University's football helmets as depicted below (the "Helmet Design").



The University developed rights in the Helmet Design long before the activities at issue in this Complaint, and the Helmet Design serves as a powerful indicator of the source of the goods and services provided by, licensed by, or otherwise

affiliated with the University.

28.     The University owns a State of Tennessee registration for the Helmet
Design. A true and correct copy of the State of Tennessee registration is attached
as **Exhibit 7.**

29.     For more than eighty years, the University has used the interlocking
UT mark depicted below in connection with its education and entertainment goods
and services ( "Interlocking UT Mark").



The University developed rights in the Interlocking UT Mark long before the
activities at issue in this Complaint, and the Interlocking UT Mark serves as a
powerful indicator of the source of the goods and services provided by, licensed
by, or otherwise affiliated with the University.

30.     The University is the owner of U.S. Trademark Registration No.
1,516,208 for its Interlocking UT Mark for "key chains," "watches and bracelets,"
"window and bumper stickers," "general purpose gym bags, and garment bags for

travel," "ceramic mugs, glass mugs, drinking glasses, goblets, and insulating sleeve-holders for beverage cans." Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable. A true and correct copy of the Certificate of Registration for the Interlocking UT Mark is attached as **Exhibit 8.**

31. For more than twenty years, the University has used the stylized UT mark depicted below in connection with its education and entertainment goods and services ("Stylized UT Mark").



The University developed rights in the Stylized UT Mark long before the activities at issue in this Complaint, and the Stylized UT Mark serves as a powerful indicator of the source of the goods and services provided by, licensed by, or otherwise affiliated with the University.

32. The University is the owner of U.S. Trademark Application Serial No. 76/673,889 for its Stylized UT Mark for "clothing and apparel items namely, shirts, T-shirts, sweatshirts, jackets, and hats," "educational and entertainment

services namely higher educational services in the nature of courses of instruction at the undergraduate and graduate level and intercollegiate sports exhibitions." A true and correct copy of the U.S. Patent and Trademark Office records for the University's application to register the Stylized UT Mark is attached as **Exhibit 9.**

33.     The University owns a State of Tennessee registration for the UT mark. A true and correct copy of the State of Tennessee registration is attached as **Exhibit 10.**

34.     For decades, UTK's men's athletic teams and fans have been referred to as the "VOLUNTEERS." Additionally, UTK's women's athletic teams are known as the VOLUNTEERS and the LADY VOLUNTEERS. The University has extensively used and promoted "VOLUNTEERS" as a trademark and service mark. The University developed trademark rights in the VOLUNTEERS mark long before the activities at issue in this Complaint, and the VOLUNTEERS mark serves as a powerful indicator of the source of the goods and services provided by, licensed by, or otherwise affiliated with the University.

35.     The University is the owner of U.S. Trademark Registration No. 1,390,743 for its VOLUNTEERS mark for "window stickers," "glass mugs," and "knit shirts." Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registrations is incontestable.

A true and correct copy of the Certificate of Registration for the VOLUNTEERS mark is attached as **Exhibit 11.**

36.    The University is the owner of U.S. Trademark Registration No. 1,335,456 for its VOLS mark for "pens, window and bumper stickers, football game charts," "general purpose gym bags," "stadium chairs," "drinking glasses, plastic cups and mugs, shot glasses, insulating sleeve-holders for beverage cans," "sweat shirts, sweat pants, shirt and vest combination." Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registrations is incontestable. A true and correct copy of the Certificate of Registration for the VOLS mark is attached as **Exhibit 12.**

37.    The University is the owner of U.S. Trademark Registration No. 2,424,730 for its T LADY VOLUNTEERS stylized mark depicted below for "metal key chains," "mouse pads and magnets," "watches and ornamental pins," "posters, prints, decals, stickers, programs, sporting event schedules, envelopes and stationary," "plastic license plates and flags," "cups, mugs and drinking glasses," "hats, T-shirts and sweatshirts," "basketballs," "entertainment services in the nature of intercollegiate sports exhibitions."



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable. A true and correct copy of the Certificate of Registration for the T LADY VOLUNTEERS stylized mark is attached as **Exhibit 13.**

      38.    The University is the owner of numerous State of Tennessee trademark registrations incorporating the VOLUNTEERS and VOLS marks, including TENNESSEE VOLUNTEERS, LADY VOLUNTEERS, VOLS, TENNESSEE VOLS, TENNESSEE VOLS & Design, LADY VOLS, T. JR. VOLS CLUB & Design, and VOL. A true and correct copy of the State of Tennessee registrations of the TENNESSEE VOLUNTEERS, LADY VOLUNTEERS, VOLS, TENNESSEE VOLS & Design, LADY VOLS, and VOL marks are attached collectively as **Exhibit 14.**

      39.    One of the University's official mascots is a bluetick coonhound named "Smokey." Since 1953, a live Smokey mascot has attended University athletic events. The current mascot is Smokey IX. The University, through its

licensees, has also extensively used the SMOKEY mark in connection with a wide variety of goods and services.

40. The University has adopted, used and promoted a design mark referred to as the SMOKEY Design Mark, which is based on imagery drawn and developed from the University's SMOKEY athletic identity. The SMOKEY Design Mark is depicted below:



41. The University owns five State of Tennessee trademark registrations for variations of the SMOKEY Design Mark. True and correct copies of these State of Tennessee registrations are attached as **Exhibit 15.**

42. For decades, the University has used the orange and white checker board design depicted below (the "Checker Board Mark").



The University has extensively used and promoted the Checker Board Mark as a

16

trademark and service mark. The University developed trademark rights in the

Checker Board Mark long before the activities at issue in this Complaint, and the

Checker Board Mark serves as a powerful indicator of the source of the goods and

services provided by, licensed by, or otherwise affiliated with the University.

43.     The University is the owner of U.S. Trademark Registration No.

2,616,220 for its Checker Board Mark depicted below for "watches," "prints,

posters, decals, magnets and stationary," "plastic license plates and flags; non-

metal key chains," "stained glass wall hangings," "afghans," "ties, shirts, sweaters,

vests, and bandanas," "entertainment services in the nature of intercollegiate sports

exhibitions."



A true and correct copy of the Certificate of Registration for the Checker Board

Mark is attached as **Exhibit 16.**

44.     The color orange is so closely affiliated with the University that it has

long been referred to as BIG ORANGE COUNTRY. The University has

extensively used and promoted BIG ORANGE COUNTRY as a nickname, as well

as a trademark and service mark. The University developed trademark rights in the

BIG ORANGE COUNTRY mark long before the activities at issue in this

Complaint, and the BIG ORANGE COUNTRY name and mark serves as a powerful indicator of the source of the goods and services provided by, licensed by, or otherwise affiliated with the University.

45. The University is the owner of U.S. Trademark Registration No. 1,333,972 for its BIG ORANGE COUNTRY mark for "metal novelty license plates, metal key chain having attached coin purse," "buckets." Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable. A true and correct copy of the Certificate of Registration for the BIG ORANGE COUNTRY mark is attached as **Exhibit 17.**

46. The University is the owner of a State of Tennessee registration for the BIG ORANGE trademark. A true and correct copy of the State of Tennessee registration is attached as **Exhibit 18.**

47. Since 1889, the University has used an orange and white color scheme in connection with its educational and entertainment services, apparel and other merchandise, including the uniforms of its athletic teams, souvenirs and memorabilia. The orange and white color scheme is used prominently and repeatedly in connection with the University's athletic teams and its many other organizations, activities and services, as well as goods sold by the University and

its licensees. The University and its licensees regularly use the orange and white color scheme in connection with goods bearing the UNIVERSITY OF TENNESSEE mark, THE UNIVERSITY OF TENNESSEE & Design mark, UNIVERSITY OF TENNESSEE, KNOXVILLE mark, THE UNIVERSITY OF TENNESSEE 1794 mark, TENNESSEE mark, Power T Mark, Helmet Design, Interlocking UT Mark, Stylized UT Mark, VOLUNTEERS mark, T LADY VOLUNTEERS mark, TENNESSEE VOLUNTEERS mark, LADY VOLUNTEERS mark, VOLS mark, TENNESSEE VOLS mark, TENNESSEE VOLS & Design mark, LADY VOLS mark, T. JR. VOLS CLUB & Design mark, VOL mark, SMOKEY mark, SMOKEY Design Mark, Check Board Design, BIG ORANGE COUNTRY mark, and BIG ORANGE mark.

48.   The University has extensively and continuously used and promoted its orange and white color scheme before the activities of Defendants outlined in this Complaint. As a result of this longstanding use and promotion of the orange and white color scheme, the University's color scheme (the "Orange and White Color Scheme Mark") has achieved secondary meaning among relevant consumers, in that it serves as a source-identifying trademark in certain contexts and circumstances, such as on merchandise that makes reference to the University, the University's accomplishments, or events in which the University will be

participating.

49. The University's UNIVERSITY OF TENNESSEE mark, THE UNIVERSITY OF TENNESSEE & Design mark, UNIVERSITY OF TENNESSEE, KNOXVILLE mark, THE UNIVERSITY OF TENNESSEE 1794 mark, TENNESSEE mark, Power T Mark, Helmet Design, Interlocking UT Mark, Stylized UT Mark, VOLUNTEERS mark, T LADY VOLUNTEERS mark, TENNESSEE VOLUNTEERS mark, LADY VOLUNTEERS mark, VOLS mark, TENNESSEE VOLS mark, TENNESSEE VOLS & Design mark, LADY VOLS mark, T. JR. VOLS CLUB & Design mark, VOL mark, SMOKEY mark, SMOKEY Design Mark, Check Board Design, BIG ORANGE COUNTRY mark, and BIG ORANGE mark, and the Orange and White Color Scheme Mark are hereinafter referred to as the "University's Marks."

50. The University's Marks have been used in interstate commerce and have achieved significant fame and public recognition, especially when appearing in connection with collegiate athletic teams and events and related apparel items. Because of their widespread use in connection with the University's activities and merchandise, the University's Marks have tremendous power as source identifiers and are famous and well known in the State of Tennessee and this District.

51. The University's exclusive licensing agent is The Collegiate

20

Licensing Company ("CLC"). The University, through CLC, licenses third parties

to use the University's Marks in connection with a wide variety goods and

services. The University's licensing program has been administered exclusively by

CLC since 1985 through the execution of form license agreements with each of the

hundreds of licensees of the University.

## B. The 2005 Trademark Agreement

52. In January 2004, Big Orange Army filed an application with the U.S.

Patent and Trademark Office to register the mark BIG ORANGE ARMY for use in

connection with "clothing, namely shirts and T-shirts, tank tops, footwear; and on

headgear, namely, hats and caps." The University and CLC met with the Big

Orange Army to discuss the University's concerns regarding the registration of the

BIG ORANGE ARMY mark. The Big Orange Army represented to the University

that the purpose of its programs was unrelated to the University and was to "give

all citizens a sense of belonging and pride," brotherhood, good community

responsibility, and assisting charities.

53. Despite warnings not to trade on the University's goodwill and

reputation or to promote Big Orange Army's activities at University events, Big

Orange Army eventually began to do exactly that. The University made repeated

attempts to work with Big Orange Army. Finally, in 2005, the University entered

into a trademark license agreement with Defendant ASM's predecessor-in-interest, Big Orange Army, Inc. (the "Trademark Agreement"). A true and correct copy of the Trademark Agreement is attached as **Exhibit 19.**

54.     As part of the Trademark Agreement, Big Orange Army, Inc. assigned the BIG ORANGE ARMY mark and the corresponding U.S. Trademark Registration No. 2,899,370 to the University. A true and correct copy of the U.S. Patent and Trademark Office record reflecting the assignment of the BIG ORANGE ARMY registration is attached as **Exhibit 20.**

55.     Big Orange Army, Inc. also assigned its State of Tennessee registrations of the marks THE BIG ORANGE ARMY, THE LITTLE ORANGE ARMY, VOL ARMY, and THE ORANGE ARMY to the University. A true and correct copy of the assignment is attached as **Exhibit 21.**

56.     The University's THE BIG ORANGE ARMY, THE LITTLE ORANGE ARMY, VOL ARMY, and THE ORANGE ARMY trademarks are hereinafter referred to as "THE BIG ORANGE ARMY Marks."

57.     Section 3 of the Trademark Agreement provides:

In return for the Army's assignment of the Trademarks and Registrations to UT, UT will grant the Army a perpetual, sole and exclusive license, with the right to grant sublicenses, to use the Trademarks for so long as the Army complies with the royalty terms and quality control terms of UT's standard trademark license agreement by entering into the standard license agreement with CLC. In addition, UT will grant the Army a non-exclusive license to

use all of the trademarks in UT's trademark portfolio administered by the
Collegiate Licensing Company ("CLC"). Such licenses will be administered
by the CLC through the program set up by that certain Agreement executed
by the CLC on _____ and by UT on _____.

58.     Neither ASM or its predecessor-in-interest has entered into the
standard license agreement with CLC, despite repeated requests that they do so.

59.     Because neither Action Sports Media nor its predecessor-in-interest
entered into the standard license agreement with CLC, the condition precedent to
the grant of an exclusive license to use the THE BIG ORANGE ARMY Marks and
a non-exclusive license to use the University's Marks has not been fulfilled.

60.     Despite the fact that none of Defendants have entered into the
University's standard license agreement and despite the fact that they have
repeatedly failed to comply with the royalty and quality-control terms of said
license, Defendants nevertheless have continued to make unlicensed and
unauthorized use of the University's Marks and THE BIG ORANGE ARMY
Marks.

## C.     Defendants' Unlawful Activities

61.     On information and belief, since 2002, Defendants have used the
University's Marks and the BIG ORANGE ARMY Marks in connection with the
promotion of the University's athletic teams.

62. Defendants own and operate the website located at www.bigorangearmy.com, which offers information and products featuring the University's Marks and the BIG ORANGE ARMY Marks. Representative pages from this website are attached as **Exhibit 22.**

63. According to its website, "[t]he Big Orange Army is built on a military-style ranking system, where we promote and reward the outstanding fans who go above and beyond the call of duty to promote the University and their communities."

64. Any person can become a "member" of the Big Orange Army by purchasing a "Recruiter Package" from Defendants' website. The website depicts the contents of such a "Recruiter Package" by showing images that include the University's Power T mark and an orange-and-white pom pom:



65.     Defendants have "sold" sponsorships and granted sublicenses to
numerous third-party businesses to use the BIG ORANGE ARMY Marks in
connection with their advertising and promotional efforts.  Examples of these are
attached as **Exhibit 23**.

66.     Defendants have incorporated the University's Power T mark into
Defendants' principal logo (which also incorporates the University's BIG
ORANGE ARMY mark), as depicted below:



67. In perhaps the most egregious example of Defendants' bad faith infringement and passing-off, Defendants, on information and belief: (i) surreptitiously obtained official CLC hologram stickers from a licensed manufacturer of the University, (ii) arranged for plastic orange "army" helmets (bearing the Power T mark) to be manufactured in China by an unlicensed third-party manufacturer, (iii) applied the official CLC hologram stickers to the helmets (without submitting the helmets or artwork to CLC for approval by the University, and without obtaining permission from the University or CLC), and (iv) sold the helmets to unsuspecting fans, students, and alumni of the University.

68. Defendants also claim that they have "renamed" the University's football stadium from NEYLAND STADIUM to "Fort Neyland," and they have offered goods and services under the FORT NEYLAND mark in an attempt to pass those goods and services off as those of the University and to trade on the goodwill

associated with the University. Indeed, the principal "FORT NEYLAND" image incorporates a silhouette of the stadium and a reference to "108,000 strong" – the capacity of the University's Neyland Stadium:



69.    Apparently unsatisfied with mere infringing use of the NEYLAND trademark, Defendant Unified Armies of America has even gone so far as to seek a federal trademark registration for the FORT NEYLAND mark (Serial No. 77/237,985). Defendant Unified Armies of America filed an application to register the mark FORT NEYLAND, which is a reference to the University's Neyland Stadium and former University coach General Neyland, with full knowledge that Defendants have no rights in the NEYLAND name or mark.

70.    The University's efforts to cause Defendants to cease their efforts to rename Neyland Stadium and to otherwise comply with the University's

requirements were rejected by Defendants, and the University has not licensed, authorized, sponsored, endorsed or approved Defendants' use of the University Marks, the BIG ORANGE ARMY Marks, the FORT NEYLAND mark, or Defendants' goods and services.

71.     The University's Marks were used extensively and continuously before Defendants established the Big Orange Army and offered for sale Defendants' goods and services.

72.     Defendants' goods and services are similar to goods and services sold or licensed by the University, and Defendants sell their goods and services to students, fans, and alumni of the University, which increases the likelihood of confusion.

73.     Defendants' use of the University Marks and the BIG ORANGE ARMY Marks in connection with the marketing, manufacture, distribution, and sale of its goods and services is likely to deceive, confuse and mislead prospective purchasers and purchasers into believing that Defendants' unlicensed and unauthorized goods and services were produced or authorized by or in some manner associated with the University. The likelihood of confusion, mistake and deception engendered by Defendants' unauthorized and unlicensed use of the University's Marks and the BIG ORANGE ARMY Marks is causing irreparable

harm to the University.

74. Purchasers and prospective purchasers viewing Defendants' unauthorized and unlicensed use of the University Marks and the BIG ORANGE ARMY Marks in connection with Defendants' goods and services and perceiving a defect, lack of quality, or any impropriety are likely to mistakenly attribute them to the University. By causing such a likelihood of confusion, mistake and deception, Defendants are inflicting irreparable harm on the University's goodwill.

75. Defendants' unauthorized and unlicensed use of the University's Marks and the BIG ORANGE ARMY Marks in connection with Defendants' goods and services is calculated to trade on the valuable goodwill and commercial magnetism of the University's reputation and identity in Tennessee and elsewhere. Defendants are attempting to pass off their goods as having been licensed, sponsored, approved, or otherwise affiliated with the University.

76. Defendants are willfully, intentionally and maliciously using the University's Marks, or adopted imitations of the University Marks, and the BIG ORANGE ARMY Marks, to cause and enhance confusion, and have otherwise deliberately attempted to pass off their unlicensed and unauthorized goods and services as those provided or licensed by the University.

29

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT

77.     Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 - 76.

78.     Defendants are using the University's Marks, and confusingly similar imitations of the University's Marks, and the BIG ORANGE ARMY Marks, in connection with unlicensed and unauthorized goods and services. This conduct is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' unlicensed and unauthorized goods and services are manufactured or distributed by the University or Defendants' goods and services are associated or connected with the University, or have the sponsorship, endorsement or approval of the University.

79.     Defendants have used the University's Marks, or confusingly similar variations thereof, and the BIG ORANGE ARMY Marks, in violation of 15 U.S.C. § 1114, and Defendants' activities have caused and unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to the University's goodwill and reputation as symbolized by the University's federally registered marks, for which the University has no adequate remedy at law.

80.     Defendants' actions demonstrate an intentional, willful, and malicious

intent to trade on the goodwill associated with the University's federally registered marks to the University's great and irreparable injury.

81.     Defendants have caused and are likely to continue causing substantial injury to the public and to the University, and the University is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## COUNT II
## FEDERAL UNFAIR COMPETITION

82.     Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 - 81 as if fully set forth here.

83.     The actions complained of herein have caused and are likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' goods and services are affiliated, connected or associated with the University, or have the sponsorship, endorsement, or approval of the University.

84.     Defendants have made false representations, false descriptions, and false designations of origin of its goods and services in violation of 15 U.S.C. § 1125(a), and Defendants' activities have caused, and unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to the University's goodwill and

reputation as symbolized by the University's Marks to the University's great and irreparable injury.

85.    Defendants' conduct has caused, and is likely to continue causing, substantial injury to the public and to the University, and the University is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(a), 1116, and 1117.

## COUNT III
## FEDERAL COUNTERFEITING

86.    Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 - 85 as if fully set forth here.

87.    Defendants have knowingly sold, offered for sale, and distributed goods and services bearing the University's Marks and the BIG ORANGE ARMY Marks.

88.    As a result of Defendants' sale, offering for sale, and distribution of goods and services bearing the University's Marks and the BIG ORANGE ARMY Marks, Defendants are using counterfeit marks, as that term is defined in Section 34(d)(1)(B) of the Lanham Act, and Defendants are accordingly liable under the anticounterfeiting provisions of the Lanham Act.

89.    Defendants' use of spurious marks identical to or substantially

indistinguishable from the University's Marks and the BIG ORANGE ARMY Marks violates 15 U.S.C. § 1114, and Defendants' activities are causing and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to the University's goodwill and reputation as symbolized by its federally registered marks, for which the University has no adequate remedy at law.

90. Defendants are likely to continue causing substantial injury to the public and to the University, and the University is therefore entitled to entitled to injunctive relief, an accounting for profits, damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117. Pursuant to 15 U.S.C. § 1117(b), the University is entitled to trebling of the greater of profits or damages, and to prejudgment interest. Alternatively, pursuant to 15 U.S.C. § 1117(c), the University is entitled to recover statutory damages for Defendants' willful use of counterfeit marks.

## COUNT IV
## STATE TRADEMARK INFRINGEMENT

91. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 - 90 as if fully set forth here.

92. The University is the owner of valid and subsisting state registrations for the UNIVERSITY OF TENNESSEE, KNOXVILLE mark, THE

33

UNIVERSITY OF TENNESSEE 1794 mark, Power T Mark, the Helmet Design, the UT mark, TENNESSEE VOLUNTEERS mark, LADY VOLUNTEERS mark, VOLS mark, TENNESSEE VOLS mark, TENNESSEE VOLS & Design mark, LADY VOLS mark, T. JR. VOLS CLUB & Design mark, VOL mark, SMOKEY Design Mark, BIG ORANGE mark, THE BIG ORANGE ARMY mark, THE LITTLE ORANGE ARMY mark, VOL ARMY mark, and THE ORANGE ARMY mark.

93.     Defendants' unauthorized use in commerce of the University's state registered marks or reproductions, counterfeits, copies or colorable imitations thereof, in connection with Defendants' unlicensed and unauthorized goods and services, or Defendants' advertising thereof, is likely to deceive or cause confusion or mistake as to the source of the goods.

94.     Defendants are causing and will continue to cause irreparable injury to the University's reputation and the goodwill represented by the state registered marks, and such acts have been committed with the intent to cause confusion, mistake and deception, in violation of Tenn. Code Ann. § 47-25-512, and Plaintiffs therefore are entitled to injunctive relief and to recover profits and damages pursuant to Tenn. Code Ann. § 47-25-514(a). Because Defendants committed infringement with knowledge or in bad faith, the University is also entitled to an

award of treble damages and/or attorneys' fees.

## COUNT V
## STATE TRADEMARK DILUTION

95.    Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 - 94 as if fully set forth here.

96.    The University's Marks and THE BIG ORANGE ARMY Marks are distinctive, strong, and famous and became so before Defendants' activities described in this Complaint.

97.    Defendants are making unauthorized and unlicensed commercial use in commerce of the University's Marks and THE BIG ORANGE ARMY Marks. Defendants' conduct blurs the public's exclusive identification of the marks with the University and tarnishes and degrades the positive associations and prestigious connotations of the marks. As a result of Defendants' acts referenced hereinabove, the University has suffered and is likely to suffer irreparable injury to its business reputation and trade name.

98.    Defendants' acts constitute a violation of the Tennessee Anti-Dilution Statute, Tenn. Code Ann. § 47-25-513(a).

99.    As a result of Defendants' acts, Defendants have caused and will continue to cause injury to the University, and the University is entitled to injunctive relief.

100. Because Defendants have willfully intended to trade on the University's reputation and to cause dilution of the University's famous marks, the University is entitled to disgorgement of Defendants' profits and actual damages, subject to the discretion of the court and the principles of equity.

## COUNT VI
## COMMON LAW TRADEMARK INFRINGEMENT

101. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 - 100 as if fully set forth here.

102. Defendants' acts constitute common law trademark infringement, and have created and will continue to create a likelihood of confusion to the irreparable injury of the University unless restrained by this Court. The University has no adequate remedy at law for this injury.

103. On information and belief, Defendants acted with full knowledge of the University's use of, and statutory and common law rights to, the University's Marks and the BIG ORANGE ARMY Marks without regard to the likelihood of confusion of the public created by Defendants' activities.

104. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the University's Marks and the BIG ORANGE ARMY Marks to the great and irreparable injury to the University.

105. As a result of Defendants' acts, the University has been damaged in

an amount not as yet determined or ascertainable. At a minimum, however, the University is entitled to injunctive relief and damages.

## COUNT VII
## COMMON LAW UNFAIR COMPETITION

106. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 - 105 as if fully set forth here.

107. Defendants' conduct constitutes common law unfair competition, and has created and will continue to create a likelihood of confusion to the University's irreparable injury unless restrained by this Court. The University has no adequate remedy at law for this injury.

108. On information and belief, Defendants' conduct demonstrates a bad faith, intentional, willful, and malicious intent to mislead, deceive, and confuse the public.

109. Such conduct is in violation of the common law prohibition against unfair competition. The University is therefore entitled to injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that:

1. Defendants and all agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendants, or in concert or participation with Defendants,

and each of them, be enjoined preliminarily and permanently, from:

a. using the University's Marks, the BIG ORANGE ARMY Marks, or any other copy, reproduction, colorable imitation, or simulation of the University's Marks or the BIG ORANGE ARMY Marks on or in connection with Defendants' goods or services;

b. using any trademark, service mark, name, logo, design, or source designation of any kind or in connection with Defendants' goods or services that is likely to dilute the distinctive quality of University's Marks and the BIG ORANGE ARMY Marks;

c. use of any false descriptions or representations or any false designations of origin or from otherwise committing any acts of unfair competition with respect to the University and its trademarks and service marks, including the BIG ORANGE ARMY Marks, by using these marks or any trade name, trademark or service mark confusingly similar to any of these marks without authorization by the University;

2. That Defendants be ordered that all goods, signs, labels, brochures, advertising, web sites, promotional materials bearing the University's Marks or the BIG ORANGE ARMY Marks in Defendants' possession or subject to Defendants' control or direction shall be delivered to the University's counsel for destruction;

3. The University be awarded all damages caused by the acts forming the basis of this Complaint;

4. Based on Defendants' knowing and intentional use of confusingly similar imitations of the University's Marks and the BIG ORANGE ARMY Marks, the damages award be trebled as provided for by 15 U.S.C. § 1117(a);

5. Defendants be required to pay to the University the costs of this action and their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and the State statutes cited in this Complaint; and

6. The University have such other and further relief as the Court may deem just.

## JURY DEMAND

Plaintiff requests a trial by jury of all issues that are so triable.

39

Dated: _2/2/08_

Respectfully submitted,

Thomas C. Doolan
BPR # 012513
Associate General Counsel
University of Tennessee
719 Andy Holt Tower
Knoxville, Tennessee 37996-0170
(865) 974-3245 (telephone)
(865) 974-3074 (facsimile)

Of Counsel:

R. Charles Henn Jr. (Ga. Bar No. 347098)
Alicia G. Jones (Ga. Bar No. 141415)
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
(404) 815-6500 (telephone)
(404) 815-6555 (facsimile)

Attorneys for Plaintiff